Good morning and may it please the Court. My name is Bijan Esfandiari and I will be representing the appellants and plaintiffs in this case. With the permission of the Court, I'd like to reserve three minutes for rebuttal. The primary question presented in this appeal is whether or not the District Court abused its discretion in denying Plaintiff's Rule 60B motion. A cornerstone of our judicial system is the pursuit of justice. As part of that pursuit of justice, Rule 60 affords courts the power to vacate judgments whenever such action is appropriate in order to accomplish justice. This Court has referred to Rule 60... We review for abuse of discretion, however, yes? That is correct. This Court has reviewed Rule 60 as the grand reservoir of equitable power. A central principle of justice and fair play is that the applicable rules, ground rules, should not be changed in the middle of the litigation. In this case... Maybe you should just jump in with Henson, I guess. That's where I'm going next, Your Honor. I apologize. That should be the beginning point of our analysis. Certainly. In this case, we plaintiffs relied upon 20 years' worth of Ninth Circuit precedent to voluntarily dismiss their claims. In order to facilitate appeal of various interlocutory orders, including a denial of class action... But at the time you filed your motion, or at least at the time the motion was heard, the cert petition had already been filed. And you knew that, right? No. At the time we filed our motion... I'm sorry. At the time you filed your reply brief, the cert petition had been filed. And you knew that because you cited, in your reply memorandum, you cited the case. That is correct, factually. And also, in fact, the petition had been filed before even Lilly opposed the motion. Notably, Lilly didn't even address the fact that the petition had been filed, nor was it addressed by the Court. So the fact that the petition has been filed, I don't think is of any moment... I mean, I think Your Honors know that the rate in which the Supreme Court grants petition, the last numbers I checked was 1.2 percent. 6,700 writs filed, I believe... Probably a little higher, though, where there's a circuit split, yes? Curiously enough, in this case, Your Honor, and we read the underlying petition and the denial and opposition to the petition, what the district court had done in Baker was stricken the class action certification. There was not even a hearing on the merits of the class certification motion. It had simply just, on the pleading stages, stricken the class certifications. And there was no circuit split on that issue. Actually, the opposition in the petition noted that 9th Circuit was alone. No other circuit had actually specifically addressed that issue. But then in January, the Supreme Court granted cert. In January, the Supreme Court granted cert. And you could have, if you had wanted to at that point, gone back to the district court and said, you know, we don't want to risk the Supreme Court changing the rules, why don't you give us a do-over on the voluntary dismissal with prejudice, and let's wait and see what the Supreme Court does. And that was an option, right? I've never seen that option exercised. I know that the district court referred to that, Your Honor. I do note one thing, though. When we were in the 9th Circuit and the petition had been granted, Lilly moved this court to stay the proceedings in light of Baker being granted, and this court denied that request. So this court actually felt that it was proper to proceed with the appeal. And, in fact, it was our position that, unlike Baker, for example, here we had multiple issues that were dismissed by the court of appeal. For example, the injunction relief was actually dismissed by the appeal. So our position was, regardless of how Baker was going to be decided, the merits of the actions that were non-voluntarily dismissed should have still had been an opportunity to be ruled on the merits. But I think the fact that this court itself allowed the briefing to proceed, notwithstanding Lilly's request to have it stayed, speaks volumes that we were in the right to proceed with the appeal. The reason I ask you to start with Henson is that it's obviously on point in terms of, at least superficially, it's on point in terms of the posture. Absolutely. But there, one of the distinguishing features, potentially, is that the parties got together by stipulation to dismiss the claims. And our court seemed to place a good deal of weight on the fact that, if 60B relief were denied there, the plaintiff would essentially have been deprived of all of the benefits of the bargain it struck with the defendant but saddled with all the burdens. And that just seemed unfair in the posture of that case. Here, of course, there is no stipulation. You actually had your opponent fighting tooth and nail to prevent you. It's pretty rare that the defendant says, please do not dismiss this case against us. We want to litigate it. So you kind of had to go in with a whole different set of expectations than the plaintiffs in Henson. So why isn't that a basis to distinguish Henson here? I don't think it is because I think the ultimate issue is whether are you allowed to voluntarily dismiss your claims, whether that is reached by stipulation or an adversarial situation. If anything, I think here a lot of times the courts, for example, the Supreme Court looks at those stipulations and says, well, this was not really an adversarial process and therefore that was one of the bases as to why the courts do not like the voluntary dismissal. Here it's actually an adversarial process. We rely upon, as I said, 20 years' worth of Ninth Circuit precedent wanted to be before the court. I think the fact that it was done in a motion for dismissal versus a stipulation I don't think should have much bearing because ultimately the intent was the same in both litigations. The intent was to end the litigation. Yeah, but the risks that you were taking on, it seems to me, are somewhat different because you, at least if you were sophisticated, as I'm sure you are, would have recognized that there was some risk that the rule that you were relying upon would not be set in stone forever and could be changed by the Supreme Court. In fact, it was quite ripe to be reviewed by the Supreme Court, as you found out just a short time after the dismissal. So you went in, it seems to me, recognizing that there was a risk that this tactic you were justifiably relying upon our case law at the time, but you knew there was a risk that the rug might be pulled out from under you. And it seems to me the defendant certainly put you on notice that, if nothing else, they might think this was the case to take up to the Supreme Court, and if the Supreme Court ultimately ruled against you, you would be out of luck. So you kind of rolled the dice, thinking that it was better for our clients not to litigate this to the bitter end. We're going to take somewhat of a chance that this rule might not survive, but we think it's worth it. And unfortunately, in life, sometimes gambles don't pay off. So I guess I'm sort of less sympathetic to your position than I might have been to the plaintiffs in Henson, precisely because it wasn't part of the stipulated bargain. Well, in Henson, Your Honor, the defendant also put point of on notice that we don't agree that there's jurisdiction. I think part of the stipulation that was cited by the court and referenced by the court, the defendants in any of these situations, whether it's done through the way we did it or whether it's done by stipulations, defendants always argue there is no jurisdiction and we're free to raise those arguments with the Ninth Circuit. So the parties in Henson and in this case are in the same position, regardless of how they achieved that voluntary dismissal. You know, going back to Judge Watford's point, I mean, in Henson, the court said the key question is justice must be done in light of all the facts. Absolutely. And it just seems to me that the fact that Judge Watford is putting out there for you really distinguishes this from Henson. It just strikes me that there is a big difference between the parties agreeing on this course, even though a defendant is reserving the right, and the facts here where you lost two trials, you had another way you could go, the defendants are saying to the judge, don't do this. It just strikes me as this is a different situation if we're looking at justice must be done. Well, if I can address a few things, unpack a few things there. One, the two trials, Your Honor, are not relevant at all. Those were two trials and a personal injury action that just happened to be in front of Judge Wilson at the time that this class action was. They were not part of this class action. And that's one of the abuse of discretion errors that the court committed by confounding the other cases that were in front of him with this case. The Hexham and Herrera cases were personal injury litigations and had nothing to do with the class action going forward. Those plaintiffs raised different claims, and they went to trial, and because for various reasons they lost, that has no bearing on the issue here. Okay. But here, Your Honor, I think the fact, while I appreciate that here there was an adversarial process and there a stipulation, the facts are the same. Simply put, Your Honors, had Baker been in existence, had the law been what Microsoft was today, there's no way we would have done this. It would have been a suicide mission. And that's the problem. We relied on established circuit precedent as we're allowed to do. I mean, case law after case law has held you are allowed to rely upon it, and it was the most efficient way to get there. I could see your sort of the merit of your position, I suppose, would be stronger, it seems to me, if you basically didn't have another option. But you had another option. You didn't have to dismiss the claims to take the appeal. You could have litigated to the end and then taken an appeal from the final judgment. So you chose, you chose between two competing paths, one fraught with risk. Whether you realized it or not, it was there. And the other, no. And you chose, you said, you know what, it's better that we not litigate this to the end. Let's take a chance. I respectfully disagree, Your Honor, because if you look, for example, Henson, they took the same risk. There was actually another case, an unpublished decision, Torrent, which were plaintiffs, and we cited it in our reply, which plaintiffs were in the same position. And the court there actually, when it sent the case, the Ninth Circuit, when it sent the case back to the district court, said this case is ripe. This doesn't end the case. This case is ripe for a Rule 60 motion because of the way that the law was changed midstream. There's other cases that we cite to, for example, Connolly, where the district court actually granted a Rule 60. So we are not alone, Your Honor. What we did, every other class action litigant in the Ninth Circuit did up to the point that Baker finally was decided. It's very common practice. It was, well, I know, and even in Henson, they did discuss the risk. But it seems to me for you to prevail here, we have to basically say 95 percent of what we wrote in Henson, because it was quite a long decision, was totally irrelevant. We should have just recognized that every single plaintiff in your client's shoes who availed themselves of the Baker remedy or the Baker tactic should get 60B relief. And that's the end of the story. But instead, we went through quite a convoluted analysis, it seems to me, going through all sorts of factors that are not all of which are present here, in order to finally say on the facts of that case the plaintiffs were entitled to relief. It seems to me you just want us to short circuit that. Not at all. I want the Phelps and Henson factors applied, the relevant Phelps factors and the Henson factors applied. And if you apply every one of those factors, they lean towards or are heavily in our favor. So if we go through the factors, change of law, Henson held that that fact was either neutral or slightly in favor of the plaintiffs. I think the same should hold true. And what we said, though, even though we said it barely favored the plaintiffs there, we pointed out that there was no pending cert petition. And we sort of suggested, albeit by negative inference, that if a pending cert petition in Baker had been on the table, that the analysis might have been different. And here, as Judge Bennett pointed out, by the time you filed your reply brief, there was a pending cert petition. But then nobody felt it was relevant because not even the defendant, not even Lily pointed to it. I'm just saying what we said in Henson. That's why I say you want us to basically ignore 90 percent of what we said there. I don't think I want to ignore. I think in Henson, I think the fact of the matter, though, is at the time we filed our motion, the petition had not been granted. The petition was granted, Your Honor, after a month. I'm talking about what we said. All I'm saying is what we said in Henson. We pointed out that it was relevant there, that there was neither a pending case on the You can't say that in your case. I said while that is a slight distinguishing factor, I do not think that it changes the outcome. Okay. What about the statement in your reply brief in which you acknowledged, I'll just read it to you. I'm sure you're familiar with the language. I am familiar with it. Okay. So what about that? It seems to me that's another distinguishing factor because in Henson, we said, no, the plaintiffs understood that their case would be over only if they lost on the merits of their Ninth Circuit appeal and specifically said if they had said what you guys said, the analysis might be different. And there, though, I mean, you were looking at a stipulation. This was a statement in a reply in an argument setting, and we were basically trying to distinguish some of the arguments that were made by the defendant, Your Honor. I don't think that statement alone is binding. I think it could be interpreted in multiple different ways. But the simple matter is we relied, as we're entitled to, as courts have said, we relied on established circuit precedent, Your Honor. Your Honor, I have 45 seconds left. Am I reserved to throw it right now? Of course. I'll give you a couple minutes. Thank you very much, Your Honor. All right. Let's hear from your opponents. Good morning, Your Honors. May it please the Court. I want to turn right to Henson and talk about the four reasons why we think our case is different. First, the Henson plaintiffs used the voluntary dismissal tactic a couple years before the Microsoft case reached the Supreme Court, and as we've been discussing this morning. I'm not really following the argument there. The plaintiffs feel that the district judge has really, at a very early stage of their case, thrown out large parts of it. They have, on accepted Ninth Circuit law, a way to get that immediately before the Ninth Circuit, as have 20 years of plaintiffs done before them. And so that's the natural thing, it seems to be, for any plaintiff's lawyer to do in that case. The argument that, oh, my gosh, someone filed a cert petition. Oh, oh, I should just change my entire strategy or think that now there's a much greater risk of my strategy being thrown out because someone filed a cert petition seems to me a very strange argument, given, as we all know, the very tiny percentage of cert petitions that are granted. Now, a different case if the cert petition had already been granted, but that's not what we're dealing with here. So the first point of the Supreme Court and this Court have said, as a general matter, Rule 60B isn't used to give relief from a litigation, a strategic decision that goes wrong. So while I might agree to you to some extent about should the cert petition really have that big of a difference, I think our position would have been prior to Henson is that they were on notice and they should have known that the law is at risk. Is it your position, let me make sure I understand the point you were just making, forgive me for interrupting. Is it your position that if someone takes a strategic position that every reasonable plaintiff's lawyer in the world would have taken in their position? That nonetheless, if lightning strikes and the law gets changed, there's no way they can be qualified for a 60B relief. Is that your position? I don't think the court has to go that far, although they haven't cited a case and I haven't seen a case where a court has granted Rule 60B relief where they have determined that what the plaintiffs want relief from is a strategic decision. And so I think the case law is on our side for that, but I don't think the court needs to go that far. If I get back to the importance of the cert petition, it comes up in two places within Henson. And what Henson says is that when considering the nature of the change of the law, we need to take into account whether the extent to which plaintiffs were on notice or should have been on notice that the law could change. And what Henson said is at least at the point prior to the filing of a cert petition, plaintiffs should be able to proceed assuming that the law and the circuit's not going to change. But once there's a case pending in the Supreme Court and it's explicit at Henson, whether on cert or on the merits, then the risk being accepted by following that circuit precedent needs to be accounted for. And if you look at what, you know, there's a lot in Henson to unpack, even on the, like, nature of the law, the change of law, but what the court kind of, the way it framed the issue is whether the plaintiffs were blindsided by the change in the law or whether this, they took a strategic choice that they should be held responsible for. And so the discussion about the importance of the pending cert petition I think maybe plays into that. At that point, you can't say you're blindsided. You know, the Microsoft decision, they cited it in their brief. They knew it was coming along. What I think in some ways what made Microsoft different than some of the prior cases this court had had where it had allowed and recognized jurisdiction is that the court found an abuse of discretion and reversed and remanded. So Microsoft, as far as we're aware of, Microsoft was really the first defendant who was in a position to take this issue to the Supreme Court. Berger v. Home Depot is a case where the court exercised jurisdiction but then affirmed the ruling. So there, there was no opportunity for a cert petition. One of the original cases that really started this practice, the 1995 case of the London case, again, the defendant won. And so there was a cert petition filed, but it was by the plaintiff on the grounds that they lost. So Microsoft was really, it kind of stood out as not only another instance in which the court had allowed this practice jurisdictionally and one where the party challenged it, but it was a chance where the outcome was affected by the exercise of jurisdiction and so it could go to the Supreme Court. So the case was on the Supreme Court. Henson clearly distinguished it on that ground. But even moving beyond that difference. How are, this is a different issue, but how are you prejudiced given that if cert had been denied, you would have been before the Ninth Circuit on this procedure that was then allowed, so you had no expectation that the case was over. And if we grant the 60B, you would still, it would still not be over. We absolutely had an expectation that the case would be over. As we talked about before, the risk, and this comes up in the Henson factors, the risk that they knowingly accepted is that their case would be over if this court lacked jurisdiction. That's what they said in the reply brief. If the court lacks jurisdiction, the appeal will be dismissed and this case is over. In contrast, what really Henson, the stipulation, what the court a lot of ways was focused on, the only thing that the Henson plaintiff stipulated to is if the orders were affirmed on appeal, then their case would be over. The stipulation itself was silent as to what should happen if the court lacked jurisdiction, and so I think it troubled the Henson panel that the stipulation went farther than what the parties actually agreed to. Here, Lilly wanted finality. This was a case where Lilly was convinced it had little merit because we had litigated other cases that are relevant, and I can touch on that in a second. We had won those, but it was a case in which we thought had very little merit, but the theories they were advancing, as they say in their briefs, has the potential for billions of dollars of liability. So we wanted the finality. After the dismissal of the appeal, we showed reliance on it and we took action on it because this was a potential large liability. We released our SEC filings, released information about this case. In June 2017, our 10Q that Lilly filed with the SEC said, we have moved to dismiss the Ninth Circuit appeal in this case based on the Supreme Court's decision in Microsoft v. Baker. In October 2017, we informed the SEC, our investors, the public, that this court had dismissed the appeal. This was important for Lilly because of even a low probability risk, when the risk is potentially billions of dollars, you want finality. And it was. It was a very unusual step. Counsel, I have a different question. One of the factors that the court in Henson discussed was the reliance interest in the finality of the judgment. And Henson seemed to discuss exactly how one went about making that determination, and it looks to me like obviously the district court in this case didn't have the benefit of Henson, but it seems to me that the district court's analysis of the reliance interest in the finality of the judgment was just incorrect based on Henson, since you haven't shown or demonstrated that you relied on the dismissal. Isn't that enough reason to reverse and send it back? No, I don't think it is. I think Henson talks about reliance interest, but it also points out once it faults the district court there is relying on abstract notions and interests and finality. Now, note that this court's prior decisions, both the decision in Lopez and the decision in Jones, when it addressed the interest and finality in the context of Phelps, it didn't require just reliance interest. There it relied in part on the interest and finality of the victims of the crime. And so I think the best way to reconcile all of this court's precedents is to say when there's been a showing of reliance interest, that's the strongest case for keeping the case closed. But if this court's decisions in Lopez and Jones are still good law, I think it would be over-reading Henson to say only reliance interest should be relied on. But I think for the reasons I just gave, like Lilly has changed its position publicly and legally in SEC filings to tell its investors that this case was over. And so I think if you went that direction, I think we have relied on the fact that this is over. We wanted this case to be over. As I was going back to you, this is a very unusual case when you oppose the motion to dismiss. When you enter, when over your opposition the case was dismissed, under Ninth Circuit law at that time, you knew the case was not over, correct? We knew they would take an appeal, but we didn't. And it was appeal fully authorized procedurally by existing Ninth Circuit law. True? True. So how could you represent that the case was over? Is that what you represented to your shareholders? No, we represented it was over in October 2017 after a panel in this court, which Judge Watford was on, dismissed the appeal. So after we got the benefit of the Microsoft versus. And that's another, I think, key distinction that we haven't talked about this morning between here and Henson. In Henson, this court denied the motion to dismiss, remanded the case to the district court for further proceedings. That case never ended. Here, our case was dismissed. Our motion to dismiss was granted. The case was over. And all the deadlines for taking any further steps, rehearing, rehearing, en banc, filing a cert petition, they had all come and gone. All of those deadlines were passed. This case was over. Counsel, is your colleague correct that the two jury verdicts in favor of defendant are irrelevant in our analysis? No. I think, so I'll talk about the jury verdicts. I think the most relevant. Jury verdict and the dismissal. And the dismissal. I think the most relevant case from the personal injury case. First, let me talk about why personal injury cases in general are relevant here. Those personal injury cases, the theory of liability was the same. It was that the label was misleading and inaccurate. And what the plaintiff said is, if you had had an accurate label, I wouldn't have been prescribed the drug. I wouldn't have been injured. And so that's where the personal injury comes, by showing that the label is inaccurate. I think the best decision of the four cases, and we cite four decisions that went in our favor in footnote one on page five of our brief, is Judge Sweet from the Southern District of New York's summary judgment decision, where he goes through all of their arguments and shows why, as a matter of law, the label is accurate. Their main complaint is that we listed a threshold requirement of 1%, and here are all the adverse effects that we've seen above 1%. But as Judge Sweet pointed out, there's FDA regulation saying that's how you draft a label. And so this label, that decision, goes through all of the arguments they're making here. The relevance of the jury verdict, in particular, actually the directed verdict, is probably the most relevant that Judge Wilson entered in the Hexum case. And what happened there and why we wanted discovery of prescribing physicians is that we got the testimony from the prescribing physician who said, I understand the discontinuation risk of these drugs, and the testimony was that even if the label had been the way the plaintiffs wanted it, the drug still would have been prescribed. And so I think that's entirely relevant to the theory they want to present here, which is if there had been a different label, lower demand, lower price, we would have paid less money. So when we got testimony from doctors, and that's what we wanted, we wanted their testimony from their prescribing physician saying that everyone else did this. Why is that relevant in the 60B calculus, in your view? I don't think it necessarily is. It goes into why – it shows why we were like – it was an unusual step to say we want this litigated on the merits, but we had a number of cases to show that there was reason that we thought that these claims were merits. And that's, I guess, if it has relevance to show why we were pushing so hard for finality, and finality matters. I think it is different when the parties, like in Hinson, stipulate to a dismissal to facilitate an appeal versus a party saying we want this case to be over. You know, it's a large potential liability that we think doesn't have merit, and it's better for the company to have the closure and having a final determination, and we want to proceed to take the depositions of your prescribing physician because we think we're going to show that they knew there's risk and that the people weren't misled by this label. And it's – you know, the study they point to of 44 percent that they point to, that was data that was published in a scientific journal in 2005, right? This is not – this isn't something that, like, they're coming forward and disclosing people aren't aware of. The FDA's known of this. The labels remained unchanged in this regard for over a decade. So that's why we're pushing for finality, and I think that's an important difference between this case and Hinson. So if there are no further questions. Okay, thank you, counsel. If we could put two minutes on the clock for rebuttal. Thank you very much, John. So just to hit a few points home, and I'll do it quickly. The arguments concerning statements they made to the SEC and so forth, the first time I'm hearing that is here today. They're not in the record. They never even were addressed in the briefs. I don't think they have any relevance. So that fact, one. And also, I don't think that shows any form of reliance. The type of reliance that Phelps was talking about was when you're conveyed land and you start developing the land and so forth. You know, telling others that you won or you think the case is over is not reliance. Number two, with respect to the petition question that Your Honor asked, the fact that it was pending, I think in Phelps, I'm sorry, in Hinson, the court specifically said, to the extent to which Hinson and Turner should have known that the law might change in an unfavorable way, neutral or slightly favors plaintiffs because the Supreme Court had not yet even granted certiorari in Microsoft. There's another passage, though. There's another passage, Your Honor. The pendency of a cert petition would be enough to change perhaps the analysis. And then the procedure that the district court, and I believe Your Honor also asked, about going back to the court and saying we want to change our mind type of thing, I don't think was available to us because all that had happened was a petition had been granted. There was no change of law. Rule 60B requires a change of law, so we would have had to go back to the district court and said we want to do a Rule 60B because there's a change of law. Would you entertain it? We would have lost at the first step because there was no change of law. Finally, I want to note that the reason we did what we did, I mean, we felt that the district court was very hostile in a number of the rulings. We felt there was a lot of error. In a class action case, we were given nine documents, four of which were public records, and we were asked to litigate the case and present our case. We felt that that was inappropriate, especially given that we showed in the litigation in Virginia that we produced scores of documents that should have been produced in this case that would have been relevant. Second, a lot of discussion was made about learned intermediary. One of the issues in our underlying appeal is that the learned intermediary does not apply in a statutory unfair competition case such as the one here. In fact, one of the claimants is from Missouri, and Missouri law is on point that the learned intermediary does not apply. So that was an issue that needed to be addressed on the merits by this court, yet we never got that opportunity. I believe Henson is on point, Your Honors. I believe if one goes through each factor that Henson applies, then at the end of the day all of the factors lead to our side and that the Rule 60 should have been granted. And frankly, the district court abuses discretion for not even considering many of those factors. Thank you very much, Your Honors. Thank you, Counsel. The case just argued is submitted.
judges: Watford, Rakoff, Bennett